UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
TROY HEATH,                                                 :
                                                            :
                              Petitioner,                   :
                                                            :         05 Civ. 8995 (GEL)
             v.                                             :
                                                            :         **OPINION AND ORDER**
UNITED STATES OF AMERICA,                                   :
                                                            :
                              Respondent.                   :
------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

On January 9, 2004, Troy Heath pled guilty in this Court, pursuant to a plea agreement, to conspiring to distribute narcotics, and was sentenced on April 1, 2004, to the mandatory minimum term of ten years of imprisonment. Heath now moves to vacate his conviction pursuant to 28 U.S.C. § 2255. Because "it plainly appears from the motion, [the] attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief," Section 2255 Proceedings R. 4, the motion will be dismissed.

First, the petition is untimely. "A 1-year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255. This limitation period ordinarily runs from "the date on which the judgment of conviction becomes final." Id. Heath was sentenced on April 1, 2004, and judgment was formally entered on the docket on April 5, 2004. As no appeal was taken, the judgment became final ten days thereafter, upon the expiration of defendant's time to appeal. Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005); Fed. R. App. P. 4(b)(1)(A).[1] Heath

---

[1] None of the alternative dates that may extend the limitations period apply to this case. Heath alleges no "impediment to making a motion created by governmental action," 28 U.S.C. §

1

certifies that this petition, which was received by the Court on October 6, 2005, was placed in the prison mail, and thus deemed filed, on September 19, 2005, more than five months after the expiration of the limitations period.

Heath argues that his untimeliness should be excused because he has shown "cause and prejudice" by reason of alleged ineffective assistance of counsel. (Pet. 20-21.) But the cause and prejudice standard applies to procedural defaults, not to failure to file within the statute of limitations. To the extent that Heath seeks equitable tolling of the limitations period on this basis, the argument must fail. Any dereliction of counsel while Heath's case was pending cannot excuse or explain his failure, once the conviction was final, to file his pro se petition within a year of his conviction. See Doe v. Menefee, 391 F.3d 147, 159-60 (2d Cir. 2004) (explaining limited nature of circumstances that would permit equitable tolling). To the extent Heath claims that the limitations period must be disregarded based on his claim of actual innocence, such a claim could only suffice, if at all, if it were supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 161, quoting Schlup v. Delo, 513 U.S. 298, 324 (1995). Heath offers no such evidence, beyond his bare claim, which directly contradicts his sworn admission at the time of his plea. (1/9/03 Tr. 18-20.)

Second, the petition is without merit, both as a matter of fact and law. Indeed, most of Heath's factual claims are directly and decisively contradicted by the record of the case.

---

2255(2), nor does he rely on any facts or law that were not immediately available to him at the time judgment was entered. Id. § 2255(3), (4).

1. Heath claims that he is "actually innocent of conspiracy." But most of the arguments made under this heading (Pet. 3-5) attack the alleged lack of evidence to support a conviction, rather than proffering any evidence of innocence. Since Heath pled guilty, the record does not reflect what evidence might have been offered at a trial. But Heath's particular claims (lack of tapes, the failure to apprehend the persons to whom drugs were sold, failure to seize drugs), even if factually accurate, would not establish actual innocence or even insufficiency of evidence. Heath unequivocally admitted under oath that as "[p]art of a conspiracy[,] I sold drugs and I was a lookout . . . for other people who were doing the actual selling," that he was aware that the total amount of crack sold in the conspiracy was in excess of 50 grams, that he also sold drugs himself as part of this conspiracy, and that "there were more people involved" than just himself. (1/9/03 Tr. 18-20.)

2. Heath argues that the indictment was insufficient because it "fails to charge the essential elements of a conspiracy." (Pet. 6.) The indictment specifically charges that from 2000 through June 19, 2003, in the Southern District of New York, Heath "and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States" (Indt. ¶ 1) and that the object of the conspiracy was to "distribute and possess with intent to distribute a controlled substance, to wit, 50 grams and more of . . . cocaine base" (id. ¶2). To be sufficient, an indictment "need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002). The indictment here not only did that, but also included the precise dates (e.g., "January 26, 2001"), times (e.g., "4:02 p.m."), and locations ("the vicinity of Randall

3

and Rosedale Avenues in the Bronx") of three specific occasions on which Heath allegedly sold narcotics. (Indt. ¶ 3.)

3. Heath attacks the sufficiency of his guilty plea on a variety of grounds, all of which are directly contradicted by the transcript of his plea.

a. Heath argues that the Court did not draw attention to the fact that his plea agreement contained a waiver of the right to appeal (Pet. 7), but the written plea agreement expressly includes such a waiver, and the transcript reflects that the defendant stated that he had read the agreement, discussed it with his lawyer, and understood its basic terms (1/9/03 Tr. 16). Furthermore, the Court specifically asked Heath if he understood that he could not appeal if the sentence given was anything less than 135 months, whereupon Heath confirmed that he did and that he was "willingly agreeing to give up that right." (Id. 18.)

b. Heath asserts that the Court "did not adequately determine that [he] understood the nature of the offense with which he was charged" (Pet. 7), never explained the elements of conspiracy to him or read him the indictment (id. 9, 10), never asked the defendant to describe his participation in the offense (id.), and relied on Heath's attorney's representation that he had explained the plea agreement and indictment to him (id.). In fact, the transcript reflects that the Court elicited from *Heath* (not from his attorney) that Heath had received a copy of the indictment and read it (1/9/03 Tr. 6), and that he had had adequate time to discuss the charges with his lawyer and that he had actually done so (id.); offered to read the indictment to Heath, who declined the offer (id.); personally explained to Heath the elements of the offense of conspiracy (id. 11) and asked him whether he understood them, whereupon Heath stated that he did (id. 11-12); and interrogated Heath at some length as to what he had done that made him

4

think he was guilty of the crime (id. 18-20).

    c. Heath argues that the Court failed "to inquire into Heath's [m]ental [c]ompetence after . . . receiv[ing] information that Heath had dropped out of high school, was shot in the face, and also had other problems that directly affected his 'focus' and his capacity to understand the legal proceedings," such as "untreated addictions" to drugs. (Pet. 12.) Neither lack of a high school diploma nor a history of drug usage demonstrates incompetence to plead guilty. Before accepting Heath's plea, the Court inquired into Heath's competence and understanding, learning from Heath's own mouth that he had had eleven years of formal education; had never been treated for mental illness and had no recent medical problems; had previously abused marijuana, alcohol and cocaine but had used none of those drugs in the more than six months of detention since his arrest, was suffering no withdrawal symptoms, and was clear of mind. (1/9/03 Tr. 4-5.) Neither counsel expressed any doubt about Heath's competence and the Court twice made explicit findings that Heath was intelligent and understanding and had followed and given "thoughtful" responses (including asking for clarification on several occasions before answering) to the Court's questions. (Id. 5-6, 21-22.)

  Heath suggests that the Court should have reopened this inquiry based on information in the Presentence Report ("PSR") regarding gunshot wounds he had received and his alleged inability to "focus." (Pet. 12.) However, the PSR discloses "no history of mental or emotional problems" (id. Ex. C, ¶ 46), and reveals no doubts on the part of the probation officer about Heath's competence. The shooting incident referred to occurred more than four years before the plea (id. ¶ 41) and Heath's mother, the source of the information, noted that it resulted in severe long-term *dental*, not mental, consequences (id. ¶ 43). In context, the reference to lack of

5

"focus" clearly referred to Heath's turn from academic and athletic success in the Catholic school system to a life of crime and aimlessness while in high school. (Id. ¶ 40.) None of this information provided at the time, or provides now, any reason to question Heath's competence to enter a guilty plea.

   d. Heath argues that the Court failed to establish a factual basis for the guilty plea. (Pet. 13-14.) The record reflects, as noted above, that upon the Court's open-ended inquiry into what Heath did that made him believe he was guilty of a crime, Heath confessed to all the required elements of the offense. (1/9/03 Tr. 18-20.) The Court followed up Heath's general statement that he had acted as a lookout as part of a drug conspiracy by specifically asking Heath if there were others involved in the offense besides him, to explain the time period and location during which he participated, if he knew the total quantity of drugs involved, and if he knew that what he had been doing was illegal. (Id. 19.) Heath supplemented his statement by admitting that he had also sold drugs himself. (Id. 19-20.) The Government represented that it had sufficient evidence to prove guilt beyond a reasonable doubt, and Heath's attorney advised he knew of no defenses that could prevail at trial. (Id. 20-21.)

   e. Heath attempts to avail himself of the recent decision of the Second Circuit in United States v. Gonzales, 420 F.3d 111 (2d Cir. 2005), by arguing that he was never advised that the quantity of crack involved in the conspiracy would have to be proved to a jury and that he never admitted the quantity in his allocution. (Pet. 15.) In fact, the Court specifically advised him that, among the "things the government would have to prove beyond a reasonable doubt [at trial,] . . . because of the penalty that the government wants to invoke in this case, which is extremely serious, they would have to prove the amount of cocaine involved in that conspiracy,

6

which would be . . . 50 grams of crack cocaine" (1/9/03 Tr. 11), and Heath expressly stated that he knew at the time of the conspiracy that this amount was involved (id. 19).

4. Heath also attacks the prosecutor's presentation to the grand jury, alleging that it was based on perjurious testimony. (Pet. 16-17.) Any objection to the grand jury presentation was waived by his plea of guilty. United States v. Moloney, 287 F.3d 236, 239 (2d Cir. 2002). In any event, Heath's claim is entirely devoid of factual support, identifying no particular perjury. The only purported basis for the claim is his own current assertion of innocence, from which he illogically assumes that the indictment must have been based on perjured testimony.

5. Finally, Heath argues that he received ineffective assistance of counsel, attaching a laundry list of sixteen boilerplate claims of attorney error, which essentially boil down to the claim that counsel failed adequately to investigate the case and coerced a guilty plea by advising Heath that he had no defense. (Pet. 18.) Unlike the other claims in the petition, the merits of this claim cannot be conclusively determined from the record, since Heath's assertions relate to matters outside the record. Were the petition timely filed, the Court would require counsel to file an affidavit addressing Heath's claims. See Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998) (district court should "offer the assertedly ineffective attorney an opportunity to be heard"). However, in view of Heath's utter and complete lack of credibility, as demonstrated in the above discussion of those claims that can be checked against the record, the Court declines to inquire further, in what would only be an excess of caution, into the merits of a claim that must in any event be dismissed as untimely filed.

Accordingly, for the reasons stated above, the petition must be dismissed. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of

appealability will not issue.  See 28 U.S.C. § 2253(c)(2).


SO ORDERED.

Dated: New York, New York
       November 8, 2005

                                           _____
                                                GERARD E. LYNCH
                                                United States District Judge